UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MELISSA ANN SHARP,                    )
                                      )
                Plaintiff,            )
                                      )
v.                                    )          No. 3:12-CV-467
                                      )          (SHIRLEY)
CAROLYN W. COLVIN,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to the consent [Doc. 16] of both parties. See also 28 U.S.C. § 636(c). Before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in support [Docs. 10, 11] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15]. In addition, the parties have filed supplemental briefs [Docs. 18, 22], which the Court has also considered. Plaintiff Melissa Ann Sharp ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On July 30, 2009, the Plaintiff filed an application for a period of disability and disability insurance benefits, claiming a period of disability which began on June 20, 2009. [Tr. 100-03]. After her application was initially denied and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 7-8]. On October 12, 2010, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 12-24]. On January 21, 2001, the ALJ found that the Plaintiff was not

disabled. [Tr. 28-34]. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.   The claimant had not engaged in substantial gainful activity since January 20, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: depression and migraine headaches (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she must avoid contact with the general public.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on February 16, 1969. She was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2009, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 28-34].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   POSITIONS OF THE PARTIES

The Plaintiff asserts five allegations of error. First, she argues that the ALJ failed to give controlling weight to her treating psychiatrist's opinion and explain the weight given to her primary care physician's opinion. [Doc. 11 at 13, 19]. Second, the Plaintiff asserts that the ALJ erred in her treatment of the examining and non-examining doctors' opinions. [Id. 13-15]. Third, the Plaintiff contends that subsequent medical records were not considered by the ALJ or the Appeals Council. [Id. at 16]. Fourth, the Plaintiff asserts that the ALJ failed to consider the entire record. [Id.]. Finally, she argues that the ALJ improperly applied the Grids in finding that she is not disabled. [Id. at 20].

The Commissioner responds that the ALJ properly evaluated all the medical evidence in the record. [Doc. 15 at 6-14]. In addition, the Commissioner argues that the ALJ was not required to consider the entire record and that the ALJ properly utilized the Grids to determine the Plaintiff was not disabled. [Id. at 13-18].

## V. ANALYSIS

The Court will address the Plaintiff's arguments in turn.

## A. Treating Physicians

The Plaintiff argues that the ALJ failed to give controlling weight to the opinion of her treating psychiatrist, Roger D. Burress, M.D, and that the ALJ failed to give good reasons for rejecting Dr. Burress's opinion. [Doc. 11 at 9-13]. In addition, the Plaintiff argues that the ALJ is required to consider her primary care physician's opinion. [Id. at 19].

The Commissioner responds that the ALJ properly considered and rejected Dr. Burress's opinion. [Doc. 15 at 8]. Furthermore, the Commissioner argues that the ALJ was not required to consider the primary care physician's opinion. [Id. at 13].

The Court will first analyze the treating physician rule and then address the parties' arguments.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

### (a) Roger D. Burress, M.D.

Dr. Burress has treated the Plaintiff since March 7, 2007. [Tr. 534]. In 2009, the majority of notes indicate that the Plaintiff's appearance was normal, she was dressed appropriately, she had no problems with attention, her affect was full range, her speech was at a normal rate, she was alert, her thoughts were logical and goal directed, and there were no abnormalities noted with the ability to perceive. [Tr. 435, 443, 447, 452, 520, 524].[1] The handwritten notes on the medical records, however, are largely illegible. [Tr. 435, 443, 447, 452, 520, 524]. From what the Court is able to discern, on September 23, 2009, the Plaintiff reported feeling better until she received a copy of the letter that Dr. Burress sent to TennCare. [Tr. 447]. Subsequently, on November 4, Dr. Burress wrote that the Plaintiff was still having substantial problems with her OCD and that he was going to increase the dosage of her medication. [Tr. 443]. In addition, the

---

[1] On August 26, 2009, Dr. Burress noted that the Plaintiff was disheveled. [Tr. 452]. On June 24, 2009, the Court is unsure if Dr. Burress noted that Plaintiff appeared disheveled or normal. [Tr. 524]. In addition, on June 24, 2009, her affect was sad. [Tr. 524]. Finally, on September 23, 2009, Dr. Burress noted that her affect was full range and sad. [Tr. 447].

Plaintiff described her mood as "in the middle." [Tr. 443]. She also mentioned that she enjoyed her time at home and that she dreaded work because of the rapid, fast pace. [Tr. 443].

On August 10, 2009, Dr. Burress wrote a letter stating that the Plaintiff suffered from severe recurrent depressive disorder and that she has tried several medications with only marginal success. [Tr. 348]. He stated, "She remains chronically depressed with fatigue, staying in bed most of the time [and that] her tolerance for stress is diminished[,] which prohibits her ability to remain gainfully employed." [Tr. 348]. On August 27, 2009, Dr. Burress wrote a note explaining that he had limited the Plaintiff to twenty-one hours of work due to an illness that was being treated. [Tr. 396].

In 2010, Dr. Burress's notes indicate that the Plaintiff's appearance was normal, she was dressed appropriately, she did not have problems with attention, her affect was full range, her speech was normal, she was alert, her thoughts were logical and goal directed, and there were no abnormalities with her perception. [Tr. 424, 462, 464, 493, 501, 510]. In March, the Plaintiff stated that her medication was helping her OCD. [Tr. 416]. In April, her energy level was okay, and in June, she stated that she experienced migraine-type headaches three to four times a week. [Tr. 501, 510]. She also reported that she was able to cope well and that her mood was a five out of ten. [Tr. 501]. Dr. Burress reported that she was stable but depressed. [Tr. 464 493]. Dr. Burress also reported that she was partially responding to the medications. [Tr. 482, 484]. On August 11, 2010, the Plaintiff reported that she could not see any effect while on Nefazadone but that Anafranil helped more, although it was associated with hair loss. [Tr. 464]. She also stated that her energy level was good. [Tr. 464]. Finally, on August 23, the Plaintiff reported that her medication was not working. [Tr. 462]. As mentioned above, however, many of Dr. Burress's notes for 2010 are illegible.

Dr. Burress also completed a "Medical Record Summation Inquiry" in 2010. [Tr. 384-87]. He stated that he treated the Plaintiff for obsessive compulsive disorder, social anxiety disorder, and major depression that was recurrent and severe but without psychosis. [Tr. 384]. He noted that the Plaintiff was unable to work an eight-hour workday or forty hours a week. [Tr. 384]. He explained that the Plaintiff has tried to work, but she decompensates in stressful situations. [Tr. 384]. Dr. Burress also noted that she was able to work part-time on the weekends. [Tr. 384]. He indicated that there was no known cause of her condition other than a possible genetic risk. [Tr. 384].

Dr. Burress also rated the Plaintiff's abilities. He stated that she was "poor" in the following areas: engaging in social functioning; concentrating, persisting, and pacing; adapting to work in stressful circumstances; understanding, remembering, and carrying-out complex instructions; carrying-out detailed but not complex instructions; relating predictably in social situations; dealing with the public; dealing with stress of ordinary work; and the ability to timely complete tasks found in work settings. [Tr. 385-86]. He rated the Plaintiff as "good" in the following areas: performing activities of daily living; understanding, remembering, and carrying-out simple instructions; following work rules; maintaining personal appearance; demonstrating reliability; persisting at assigned tasks; ability to relate to peers; and working at a consistent pace. [Tr. 385-86]. Finally, he reported that the Plaintiff was "fair" in the following areas: behaving in an emotionally stable manner; relating to supervisors and co-workers; using judgment; maintaining attention; and the ability to be aware of hazards. [Tr. 385-86].

Dr. Burress reported that the Plaintiff had undergone multiple medication trials, but her response to medications was either incomplete or produced intolerable side-effects. [Tr. 386].

Finally, he concluded that social problems worsened in stressful environments and that the Plaintiff would decompensate if placed in a position of full-time employment. [Tr. 387].

The ALJ stated that she rejected Dr. Burress's opinion. [Tr. 32]. She stated that his opinion appeared overly-sympathetic to the Plaintiff. [Tr. 32]. In addition, she stated that his opinion was not supported by his treatment notes, which showed prescriptions for medications with good response. [Tr. 33]. However, Dr. Burress also stated that such medications had only marginal success [Tr. 348], Plaintiff was only partially responding to medication [Tr. 482, 484], noted the Plaintiff's complaints that the medications were not working [Tr. 462, 464], and explained that despite multiple medication trials her response was either incomplete or produced intolerable side effects [Tr. 386].

The ALJ explained that Dr. Burress's narrative treatment reports, which covered the period of August 26, 2009, through August 23, 2010, indicate no problems in the areas of appearance, speech, affect, psychomotor activity, alertness, thought process, and perception. [Tr. 33]. Further, the ALJ stated that Dr. Burress appeared to endorse her part-time work. [Tr. 33]. The ALJ then explained that Dr. Burress's opinion regarding the Plaintiff's ability to maintain social functioning was supported by the medical evidence and was given significant weight. [Tr. 33]. The ALJ continued: "However, I reject his opinion that the claimant is moderately limited in her ability to maintain concentration, persistence, or pace. The evidence of record, and particularly Dr. Burress's treatment records, do not support this opinion." [Tr. 33].

The Plaintiff argues that the ALJ failed to follow the treating physician rule when discussing Dr. Burress's opinion. As mentioned above, a treating physician's opinion is only entitled to controlling weight when the opinion is well-supported by clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the case record. 20

C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). In the present matter, the ALJ found that Dr. Burress's opinion was not consistent with his own treatment notes. [Tr. 33]. However, this alleged inconsistency is only applied after the ALJ finds the treating physician's opinion is not entitled to controlling weight. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 377 (6th Cir. 2013) (finding that the ALJ's discussion of internal inconsistencies between the doctor's opinions and her reports are "properly applied only after the ALJ has determined that the treating-source opinion will not be given controlling weight"). In addition, the ALJ simply rejected Dr. Burress's opinion. The failure to assign a specific weight to a treating source opinion "alone constitutes error[.]" Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011) (citing Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009)); see also Cummings v. Comm'r of Soc. Sec., No. 3:11-cv-614, 2013 WL 1192817, at *4 (E.D. Tenn. Mar. 22, 2013) (stating that "[w]hile the ALJ stated that he declined to adopt the treating source opinion, he did not specify what weight he did give to the opinion"). Notably, however, the ALJ did assign significant weight to Dr. Burress's opinion regarding the Plaintiff's ability to maintain social functioning because it was supported by medical evidence.

Moreover, the ALJ did not give good reasons for rejecting Dr. Burress's opinion. See Gayheart, 710 F.3d at 377 ("stating that "[t]he failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation") (citing Wilson, 378 F.3d at 544). More specifically, the ALJ did not mention the length of treatment,[2] frequency of examination, the nature and extent of the treatment relationship, the amount of

---

[2] The Plaintiff argues that the ALJ failed to mention Dr. Burress's length of treatment, which began in 1994, and the "frequency of Dr. Burress's numerous examinations over the almost seventeen year span." [Doc. 11 at 10]. However, Plaintiff makes no citation to the record and the Court's review does not confirm this contention. The record before the undersigned, however, indicates that Dr. Burress began seeing the Plaintiff in March 2007. [Tr. 534].

relevant evidence that supports the opinion, the medical records regarding poor response to medication, or Dr. Burress's specialization. To be sure, the ALJ mentions that Dr. Burress's notes covered the period of August 26, 2009, through August 23, 2010; however, there is no indication that the ALJ considered this factor in determining the weight given to the opinion. See Cummings, 2013 WL 1192817, at *5 (stating what while the ALJ wrote that the clinic treatment records were from January 2008 to April 2011, there is no indication that the ALJ considered those factors in determining what weight should be given).  Finally, the Court notes that while the Commissioner argues that the ALJ considered other evidence, "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record of the ALJ to discount the treating source's opinion and, thus a different outcome on remand is unlikely." Wilson, 378 F.3d at 546. Accordingly, the Court finds that the ALJ did not properly apply the treating physician rule.

The Court now must consider whether the ALJ's error was harmless. A violation of the good reasons rule can be deemed "harmless error" if

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted).

First, the ALJ credited Dr. Burress's opinion to a certain extent, so the first exception does not apply. In addition, it is clear that the residual functional capacity is inconsistent with Dr. Burress's assessment, so the second exception does not apply. Finally, the Court finds that the Commissioner has not met the goals of § 1527(d)(2).  See Allen v. Astrue, No. 3:12-cv-4, 2013 WL 958306, at *5 (E.D. Tenn. Mar. 12, 2013) (stating that the good reasons requirement is to

prevent the scenario of the ALJ giving no weight to the treating-source opinion without first sufficiently balancing the required factors). Accordingly, the Court finds that the ALJ failed to follow the treating physician rule and discuss the applicable statutory factors pursuant to 20 C.F.R. § 404.1527(c).

Upon remand, the ALJ shall articulate the specific weight given to Dr. Burress's opinion, explain the weight given to the medical records that are contrary to the ALJ's contention that the Plaintiff showed a good response to medication, the basis – if any – for finding that Dr. Burress was overly sympathetic, and provide good reasons for the weight given to Dr. Burress's findings. As a final note, the Court does not imply Dr. Burress's opinion should be accorded controlling weight but only that the ALJ should discuss the actual weight given to his opinion and provide good reasons for doing so.

*(b) Elie Mansour, M.D.*

The Plaintiff asserts that the ALJ is required to consider and explain the weight given to Dr. Mansour's opinion. [Doc. 11 at 19-20].

The Commissioner responds that Dr. Mansour is a primary care physician and that his opinion with regard to the Plaintiff's mental impairments is outside his area of expertise. [Doc. 15 at 13]. The Commissioner also asserts that Dr. Mansour referred the Plaintiff to Dr. Burress, whose opinion was fully considered and discussed. [Id. at 13-14]. In addition, the Commissioner argues that Dr. Vargas also reviewed Dr. Mansour's notes and offered an opinion with regard to the Plaintiff's limitations. [Id. at 14]. Furthermore, the Commissioner contends that the Plaintiff worked full-time while under Dr. Mansour's care and that any opinion Dr. Mansour may have had about her ability to work would not be supported by the record. [Id.]. Finally, the

Commissioner states that the ALJ's failure to discuss Dr. Mansour's treatment notes was harmless because the ALJ is not required to comment on every piece of evidence. [Id.].

Dr. Mansour was the Plaintiff's primary care physician from 1994 to 2009. [Tr. 262-347]. In 1994 through 1995, Dr. Mansour's notes indicate that the Plaintiff experienced mild depression. [Tr. 262-64]. Dr. Mansour tried changing medication regimens of Paxil, Zoloft, Prozac, Celexa, Wellburtin, Effexor, and Cymbalta, without any seeming good long-term response to any and with repeated diagnoses of depression. [Tr. 264-77, 285-87]. On some days, she reported feeling good, but other days, she reported feeling depressed. [Tr. 264-77, 285-87]. On January 3, 2005, Dr. Mansour stated that the Plaintiff had major depression with minimal suicide thoughts and no plans to act on those thoughts. [Tr. 283].

On January 8, 2007, Dr. Mansour noted that she had not seen the Plaintiff in a year. [Tr. 288]. Dr. Mansour stated that the Plaintiff seemed to be less depressed than before, but she did not do much but sleep when she was not working. [Tr. 288]. On March 16, 2007, Dr. Mansour reported that the Plaintiff began seeing Dr. Burress. [Tr. 288]. In addition, Dr. Mansour noted that the Plaintiff described having a nervous breakdown at work. [Tr. 288]. In November 2007, Dr. Mansour noted that the Plaintiff was not doing well, but the situation seemed under control while in Dr. Burress's care. [Tr. 290]. Throughout, Plaintiff notes medication regimens changing form Klonopin to Lithium to Ritalin to MAOI medications, methylphenidates, and serax, all with a continuing diagnosis of severe depression. [Tr. 288-302].

Finally, in July 2009, the Plaintiff reported that she continued to be depressed and that she decided to quit her full-time job. [Tr. 302]. She reported that the hospital was trying to find her something part-time. [Tr. 302]. She told Dr. Mansour that she was applying for disability.

[Tr. 302]. Dr. Mansour recommended that the Plaintiff seek a second opinion from Dr. Burress with regard to quitting her job, but the Plaintiff said she was not in favor of that idea. [Tr. 302].

In the ALJ's decision, she discussed several of Dr. Mansour's notes, although the ALJ did not assign any weight to the notes. [Tr. 32]. Specifically, the ALJ stated that in 2009, the Plaintiff complained to Dr. Mansour about depression and panic symptoms while working. [Tr. 32]. The ALJ noted that when the Plaintiff said she was going to quit work and file for disability, Dr. Mansour advised her to seek Dr. Burress's opinion. [Tr. 32]. The ALJ opined that Dr. Mansour's reluctance could have stemmed from a belief that Dr. Burress would not agree with the decision to quit work. [Tr. 32]. In addition, the ALJ stated that Dr. Mansour's treatment records indicate that the Plaintiff's depression improved while on medication and that on September 8, 2008, the Plaintiff told Dr. Mansour that her prescription for Methylphenidate made her feel "a lot better" and she was "really not depressed." [Tr. 32].

The Court notes that all of the Plaintiff's visits to Dr. Mansour occurred before the relevant time period, except one, in which Dr. Mansour diagnosed the Plaintiff with anxiety, depression, panic, migraine headaches, and other physical conditions. [Tr. 302]. In addition, although she diagnosed the Plaintiff with several mental conditions, Dr. Mansour did not offer any opinions with regard to the Plaintiff's work-related limitations. Nevertheless, the Court finds that the ALJ erred by not analyzing Dr. Mansour's opinion pursuant to the treating physician rule. While the ALJ briefly mentioned Dr. Mansour's opinion, she did not articulate the weight that was given to the opinion, particularly in light of the continuing complaints by the Plaintiff, despite one statement of improvement. The continuing diagnoses of severe depression and constantly changing medications and prescriptions belie the ALJ's conclusion that Dr.

Mansour indicated she improved on medication. As noted above, this "alone constitutes error[.]" Cole, 661 F.3d at 938.

The Commissioner asserts that Dr. Mansour is a primary care physician and that mental impairments are outside her area of expertise. However, specialization is only one out of several factors that must be considered. 20 C.F.R. § 404.1527(c). The Commissioner also asserts that Dr. Mansour referred the Plaintiff to Dr. Burress and that the ALJ fully considered and discussed Dr. Burress's opinion. However, as the Court has already found, the ALJ did not properly consider and discuss Dr. Burress's opinion. In addition, just because Dr. Mansour referred the Plaintiff to a psychiatrist does not mean that the Commissioner can dispense with the treating physician rule. See Wilson, 378 F.3d at 545 ("We do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to the treating physician's opinion.") (Other citations omitted).

The Commissioner also argues that Dr. Vargas reviewed Dr. Mansour's notes an offered an opinion with regard to the Plaintiff's work-related limitations. While Dr. Vargas's opinion is certainly helpful, it does not diminish the need to analyze Dr. Mansour's opinion pursuant to the treating physician rule. In addition, the Commissioner asserts that the Plaintiff was working when she saw Dr. Mansour, so any opinion that she was disabled is undermined. However, Dr. Mansour never opined that the Plaintiff was disabled. Finally, the Commissioner argues that the ALJ is not required to comment on every piece of evidence in the record; however, the ALJ is required to comment on evidence from treating physicians. Accordingly, the Court finds that the ALJ erred by failing to fully address Dr. Mansour's opinion as required by Regulations, and on remand, the ALJ will be ordered to do so.

**B. Consultative Examiners**

The Plaintiff asserts that the ALJ erred by crediting Dr. Garland's opinion with regard to social functioning and then rejecting her opinion with regard to the Plaintiff's abilities to concentrate, persist, and pace. [Doc. 11 at 15]. She asserts that Dr. Garland's opinion with regard to social functioning is contrary to Dr. Burress's and Dr. Mansour's opinions. [Id.].[3] In addition, she argues that the ALJ failed to mention other parts of Dr. Garland's opinion. [Id. at 15-16]. The Commissioner responds that the ALJ sufficiently explained why she rejected parts of Dr. Garland's opinion. [Doc. 15 at 12].

Dr. Garland examined the Plaintiff on October 12, 2009. [Tr. 351-54]. The Plaintiff reported that she was applying for disability because she "blows up" easily under stress and is unable to control herself. [Tr. 352]. She reported that her symptoms started in the 1990s and that she was unsure why her symptoms began. [Tr. 352]. She reported that her symptoms have increased over the years and that she sees her psychiatrist once a month. [Tr. 352]. In addition, she stated that she has OCD symptoms and trouble focusing. [Tr. 352]. She reported migraines but they are better now with Depakote. [Tr. 352]. Dr. Garland noted that her thought process was organized, there was no indication of a thought disorder, insight and judgment seemed fair, affect was blunted, and she was sad and tearful. [Tr. 352]. Dr. Garland estimated that her ability to relate was fair to poor. [Tr. 353]. She opined that the Plaintiff gave some symptoms associated with bipolar disorder and OCD. [Tr. 353]. Dr. Garland concluded:

> In regard to the medical assessment, the client does not appear limited in the ability to do complex and detailed work.
>
> Ability to persist and concentrate appears to be moderately limited

---

[3] The Plaintiff also argues that the ALJ failed to provide a reason for crediting the opinion of the non-examining State agency physician. Dr. Vargas, with "significant weight" over the Plaintiff's treating physician. [Id.]. Since the Court finds that the ALJ did not adequately discuss the treating physician rule, the Court will afford the Plaintiff the relief she seeks and additional analysis of this argument is not required.

at best but could quickly exacerbate to markedly.

Ability to work with the public appears to be moderately limited at best but could quickly exacerbate to markedly.

Adaption appears to be at least moderately limited.

[Tr. 354].

The ALJ described Dr. Garland's findings and stated that her opinion regarding the Plaintiff's ability to maintain social functioning is supported by the medical evidence in its entirety and is afforded significant weight. [Tr. 33]. However, the ALJ rejected Dr. Garland's opinion that the Plaintiff is moderately limited in her ability to maintain concentration, persistence, and pace, because the evidence of record, particularly Dr. Burress's treatment records, does not support this opinion. [Tr. 33].

The problem with the Plaintiff's argument is that, to the contrary, Dr. Garland opined that the Plaintiff could socially function well. In fact, Dr. Garland stated that the Plaintiff's ability to relate to others was fair to poor, and her ability to work with the public was moderately limited at best but could quickly exacerbate to markedly. [Tr. 353]. The ALJ gave this opinion significant weight because it consistent with other evidence. [Tr. 33]. In addition, the ALJ stated, "Based on the severity of limitations in the claimant's ability to maintain social functioning, I find that she must avoid dealing with the general public." [Tr. 33].

The Plaintiff also argues that the ALJ rejected Dr. Garland's opinion that was favorable to her disability claim. Particularly, she asserts that the ALJ rejected the opinion that the Plaintiff was moderately limited in her ability to maintain concentration, persistence, or pace. The Commissioner responds, without citation, that this opinion was inconsistent with Dr. Burress's treatment notes.

19

The Court finds that the ALJ's decision is not supported with substantial evidence. Dr. Burress never opined that the Plaintiff could maintain concentration, persistence, or pace. In fact, Dr. Burress stated that the Plaintiff demonstrated poor ability in this area. [Tr. 385]. The Commissioner argues that Dr. Burress's treatment records demonstrated that the Plaintiff could maintain attention; however, the ability to maintain attention is not the same as the ability to maintain concentration, persistence, and pace. In fact, Dr. Burress stated that the Plaintiff was able to maintain attention but demonstrated poor abilities with concentrating, persisting, or pacing.

The Court notes that it is not finding that the Plaintiff is moderately limited in this area but only that the ALJ did not cite substantial evidence for her finding. Accordingly, the Court finds that the decision to discredit Dr. Garland's assessment with regard to maintaining concentration, persistence, or pace is not supported by substantial evidence.

Finally, the Plaintiff asserts that the ALJ failed to mention Dr. Garland's opinion that several of the Plaintiff's abilities could quickly exacerbate from moderate to marked. The Court finds this argument unavailing. First, the ALJ is not required to comment on all the evidence. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); Blake v. Astrue, No. 3-11-cv-317, 2012 WL 1867265, at *14 (S.D. W.Va. May 22, 2010) ("[A]n ALJ is not required to comment on every finding in a medical opinion."). More importantly, if the Plaintiff's condition does deteriorate, the proper remedy is to file a new claim for benefits. See Conner v. Astrue, No. 3:07-00872, 2010 WL 455261, *at 13 (M.D. Tenn. Feb. 1, 2010) ("Should [p]laintiff believe that his worsened conditions or his new HIV diagnosis establish his current disability, his appropriate

remedy would be to file a new application for benefits."). Accordingly, the Court finds the Plaintiff's argument is not well-taken.

### C.    Subsequent Medical Records

The Plaintiff argues that subsequent medical records were not considered by the ALJ or the Appeals Council and that these records support Dr. Burress's assessment. [Doc. 11 at 16]. In a footnote, the Plaintiff asserts that she is not submitting these records for consideration under "sentence six" because while the medical records are new and material, she cannot show good cause as to why these records were not submitted. [Id.].

The Commissioner responds that Plaintiff admits the evidence was not submitted to obtain a sentence six remand and that the additional evidence does not warrant consideration. [Doc. 15 at 18]. The Commissioner also asserts that the evidence is not material to the relevant time period at issue. [Id.].

David M. Winecoff, Ph.D, saw the Plaintiff in November 2012,[4] and on December 2, 2012, he completed a "Medical Source Statement of Ability to Do Work-Related Activities." He opined that the Plaintiff experienced mild limitations with understanding and remembering simple instructions; carrying-out simple instructions; making judgments on simple work-related decisions; and interacting appropriately with co-workers and supervisors. However, he found that the Plaintiff experienced marked limitations with the ability to understand and remember complex instructions; carry-out complex instructions; make judgments on complex work-related decisions; and interact appropriately with the public. He also opined that she had extreme limitations with the ability to respond appropriately to usual work situations and to changes in a

---

[4] Dr. Winecoff's report was attached to the Plaintiff's memorandum in support of summary judgment as an exhibit [Doc. 11-1].

routine work setting.

Dr. Winecoff also completed a long and detailed psychological evaluation. The psychological evaluation discusses the Plaintiff's mental impairments and states that she meets the criteria for major depression severe with a high probability of intermittent mood congruent psychotic features involving themes of shame, guilt, and disgust with herself superimposed on a longstanding generalized anxiety disorder. He also opined that "a dysexcutive syndrome or cognitive disorder further complicates the clinical picture and significantly disrupts her ability to attend, concentrate, and to think flexibly." In addition, Dr. Winecoff utilized several objective tests to measure the Plaintiff's mental capabilities.

The Plaintiff asserts that this new evidence supports Dr. Burress's assessment, although she is not requesting a sentence six remand. The Plaintiff's argument is unavailing. This evidence was not before the ALJ and there is no evidence that the Plaintiff submitted this evidence to the Appeals Council. Regardless the Appeals Council declined review of the Plaintiff's case. "If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ." Elliott v. Apfel, 28 F. App'x 420, 423 (6th Cir. 2002) (citing Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993)).

Standing alone, the Plaintiff's argument is not well-taken. The Court finds, however, that the ALJ can consider this evidence on remand. This case is going back to the ALJ for review, and the parties' interests and efficiency would be served by allowing this evidence to be reviewed.

**D.      The Entire Record**

The Plaintiff argues that the ALJ failed to discuss an employer questionnaire submitted by Donna Carson, the patient access manager for Mercy Health Partners. [Id. 16-20].

The Commissioner responds that the employer questionnaire is duplicative of Plaintiff's allegations and that like the allegations, the employer questionnaire is unsupported and inconsistent with the evidence. [Doc. 15 at 17]. In addition, the Commissioner argues that the ALJ was not required to discuss Dr. Mansour's opinion. [Id. at 13].

The employer questionnaire is dated December 29, 2009, and was completed by Donna Carson, the patient access manager for Mercy Health Partners. [Tr. 207-08]. Ms. Carson stated that the Plaintiff works two days a week for a total of twelve hours. [Tr. 207]. She reported that the Plaintiff does not perform the job as normally performed and that her duties included answering the phone, registering lab tickets, directing patients and family, and paging employees. [Tr. 207]. Ms. Carson indicated that the Plaintiff takes breaks when she gets upset and that she misses work approximately two days per month. [Tr. 208]. In response to whether the Plaintiff receives any special accommodations, Ms. Carson stated: "I am accommodating Missy by letting her work weekends only. She does better not being so busy and being around people. Missy tends to get nervous and upset when she is around a lot of people." [Tr. 208]. Finally, she reported that the Plaintiff "sometimes gets very upset and nervous if she gets busy or something unexpected happens." [Tr. 208].

Social Security Ruling 06-03p provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer

> to follow the adjudicator's reasoning, when such opinions may
> have an effect on the outcome of the case.

2006 WL 2329939, at *6 (Aug. 9, 2006). The Court finds that in this particular case, it was error to not mention the employer questionnaire. While the residual functional capacity incorporates Ms. Carson's observation that the Plaintiff becomes nervous around people, the Court is unsure how Ms. Carson's observation that the Plaintiff missed two days a month or becomes upset and nervous when something unexpected happens would affect the residual functional capacity, if at all. [Tr. 208]. Accordingly, the Court finds that the ALJ must explain the weight given to Ms. Carson's observations.

### E.     Grid

The Plaintiff asserts that a mechanical application of the Grids was improper because the residual functional capacity included only nonexertional impairments. [Doc. 11 at 20]. In addition, the Plaintiff asserts that the ALJ failed to include other limitations by Dr. Vargas, which would have required a vocational expert's testimony. [Id. at 21-22].

The Commissioner responds that the ALJ properly relied on the Grids to determine that the Plaintiff was not disabled. [Doc. 15 at 14]. In addition, the Commissioner asserts that the ALJ gave proper consideration to the opinion evidence of record. [Id. at 15].

Normally, when a plaintiff suffers from only exertional impairments, the ALJ may rely on the Grids to satisfy step-five. Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir. 2008). Where a plaintiff suffers from nonexertional impairments, reliance on the Grids alone is inappropriate. Abbott v. Sullivan, 905 F.2d 918 at 926 (6th Cir. 1990). "Reliance upon the [G]rids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by

[the plaintiff's] exertional limitations." <u>Shelman v. Heckler</u>, 821 F.2d 316, 321 (6th Cir. 1987).

The ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [Tr. 34]. Citing Social Security Ruling 85-15, the ALJ stated that when the Plaintiff has only nonexertional limitations, the Grids provide only a framework. [Tr. 34]. Subsequently, the ALJ found that "the additional limitations have little or no effect on the occupational base of unskilled medium work." [Tr. 34].

In the present matter, the residual functional capacity limits the Plaintiff to performing medium work, except that she must avoid contact with the general public. The ALJ relied upon the Grids and SSR 85-15 to find that the Plaintiff was not disabled. SSR 85-15 states that the inability to deal with the public would not necessarily equate to a finding of disability for a younger person. 1985 WL 56857, at *5 (1985). At the time of the Plaintiff's alleged onset date, she was 40 years old, which is defined as a younger individual. [Tr. 33]. Accordingly, the Court finds that the ALJ did not err.

In addition, the Plaintiff argues that the ALJ did not include Dr. Vargas's entire assessment. The Plaintiff argues that had the ALJ fully adopted Dr. Vargas's limitations, the ALJ would have had to call a vocational expert to testify.

The ALJ stated that significant weight was given to Dr. Vargas's opinion that the Plaintiff could perform unskilled tasks with limited social interaction because it was consistent with Dr. Garland's opinion. [Tr. 33]. The Court finds that the ALJ was not required to fully adopt Dr. Vargas's entire assessment. Dr. Vargas did not examine the Plaintiff, and thus, his opinion is not entitled to any weight. Accordingly, the Court finds the Plaintiff's arguments not well-taken.

## VI. CONCLUSION

Having determined that this case must be reconsidered by the Commissioner, the Court will not grant an immediate award of benefits. For the foregoing reasons, the Court finds that the Plaintiff's Motion for Summary Judgment [**Doc. 10**] is **GRANTED IN PART** and **DENIED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 14**] is **GRANTED IN PART** and **DENIED IN PART**, as follows.

Accordingly, it is **ORDERED**:

(1) The ALJ is directed to explain the weight given to Dr. Burress's opinion and provide good reasons for the weight given;

(2) The ALJ is directed to weigh Dr. Mansour's opinion and provide good reasons for the weight given;

(3) The ALJ is directed to reanalyze Dr. Garland's assessment that the Plaintiff experiences moderate limitation with the ability to maintain concentration, persistence, or pace;

(4) The ALJ is directed to consider and weigh Ms. Carson's employment questionnaire; and

(5) The ALJ is directed to consider the new evidence presented by the Plaintiff.

**IT IS SO ORDERED.**

ENTER:

_____ s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge

27